# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JOHN MALOTT and MICHELLE MALOTT, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil No. 3:16-cv-45 ) Judge Aleta A. Trauger |
| MARRIOTT HOTEL SERVICES, INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

The defendant, Marriott Hotel Services, Inc. ("Marriott"), has filed a Motion to Dismiss (Docket No. 15), to which the plaintiffs, John Malott and Michelle Malott, have filed a Response in Opposition (Docket No. 17), Marriott has filed a Reply (Docket No. 18), and the plaintiffs – with leave of court – have filed a Sur-Reply (Docket No. 29). For the following reasons, the motion will be denied.

## BACKGROUND

This action arises out of a Norovirus infection[1] that one of the plaintiffs, Mr. Malott, allegedly contracted while staying at the Gaylord Opryland Resort and Convention Center (the "Opryland Hotel") in January of 2015. The plaintiffs allege that the Opryland Hotel was aware of a Norovirus outbreak among its guests before Mr. Malott arrived, but failed to appropriately address the outbreak or to warn Mr. Malott of the risk of infection. As a result of these failures, Mr. Malott was infected with Norovirus and, weeks later, was hospitalized with a heart condition

---

[1] Norovirus is a highly contagious gastrointestinal illness that spreads easily and quickly from person to person. Norovirus illness usually develops within forty-eight hours of exposure and may lead to "severe complications and death." (Docket No. 14 ¶ 9.)

allegedly caused by that infection. The plaintiffs, Mr. Malott and his wife, filed suit against the owner and operator of the Opryland Hotel, the defendant Marriott. Marriott now seeks dismissal of the plaintiffs' claims on the grounds that they are subject to procedural requirements of the Tennessee Health Care Liability Act, Tenn. Code Ann. § 29-26-101 *et seq.* (the "THCLA"), with which the plaintiffs failed to comply.

I. **The Plaintiffs' Allegations and Claims**[2]

On January 16, 2015, Mr. Malott traveled from his home in Arizona to Nashville, Tennessee to perform contract work on one of the ballrooms at the Opryland Hotel. Over the next three days, Mr. Malott "stayed continuously on the [hotel] premises and never left" the hotel. (*Id.* ¶ 27.) Mr. Malott consumed food and beverages prepared by the defendant's employees; interacted with the defendant's employees and agents and with other guests; and walked throughout the facility on his way to and from meetings and restaurants. At 3:00 a.m. on January 19, 2015, Mr. Malott developed "chills and nausea" and, by 5:00 a.m., he was beginning to experience "serious diarrhea and fatigue." (*Id.* ¶ 29.) Mr. Malott continued to experience these symptoms throughout the morning and early afternoon of January 19, 2015. According to the plaintiffs, Mr. Malott had – like many other guests at the Opryland Hotel – been infected with Norovirus. Furthermore, the plaintiffs allege that, for at least a week before Mr. Malott checked into his room, the Opryland Hotel was aware of a Norovirus outbreak on its premises, but failed to warn incoming guests – including Mr. Malott – "due to concerns about financial loss for the facility." (*Id.* ¶ 12.)

At some point after he was infected with Norovirus, Mr. Malott left the Opryland Hotel

---

[2] Unless otherwise noted, the facts recounted in this section are drawn from the Amended Complaint (Docket No. 14) and are assumed to be true for purposes of evaluating the Motion to Dismiss.

and returned to Arizona, where he continued to experience "abdominal distention with indigestion and gastrointestinal issues." (*Id.* ¶ 35.) On February 7, 2015, Mr. Malott experienced difficulty breathing and was taken to an emergency room in Prescott, Arizona. Tests confirmed that Mr. Malott had developed an aortic aneurism, and he was diagnosed with congestive heart failure and pleural effusion. Mr. Malott ultimately underwent surgery for a left and right heart catheterization, a valve replacement, and installation of a pacemaker. Prior to contracting Norovirus during his stay at the Opryland Hotel, Mr. Malott had no history of congestive heart failure or any significant cardiac condition, and the plaintiffs allege that the Norovirus infection caused his heart condition.

The plaintiffs filed suit against Marriott on January 19, 2016, alleging various causes of action based on Marriott's alleged failure to "prevent the [Norovirus] outbreak, . . . provide incoming guests with notice of the outbreak, and . . . appropriately address the outbreak in a timely manner." (Docket No. 1 ¶ 33.) Based on these failures, the plaintiffs alleged claims of negligence;[3] breach of implied and express warranties; intentional, reckless, and negligent misrepresentation and misrepresentation by concealment; and loss of consortium. (*Id.* ¶¶ 43–110.) With regard to the negligence claim, the plaintiffs allege that Marriott breached its duties to: (1) maintain Opryland Hotel in a reasonably safe condition; (2) properly sanitize and disinfect common areas, guest rooms, and items used in food and beverage service; (3) provide untainted food and beverages; (4) quarantine infected guests and employees; and (5) warn Mr. Malott of

---

[3] The plaintiffs also assert a claim for "*res ipsa loquitor*" (Docket No. 14 ¶¶ 63–68), which is not an independent cause of action but, rather, a doctrine stating that a plaintiff may prove a common-law negligence claim merely by demonstrating "(1) that the injury or damage was probably the result of negligence and (2) that it was probably the defendant who was the negligent person." *Burton v. Warren Farmers Co-Op.*, 129 S.W.3d 513, 523 (Tenn. Ct. App. 2002).

the health risks associated with Norovirus prior to, or during, his stay. (*Id.* ¶ 46.) In their initial Complaint, the plaintiffs additionally alleged that Marriott breached its duty to "provide, and/or adequately direct [Mr. Malott] in obtaining, proper medical and other necessary treatment for the Norovirus upon and/or prior to [Mr. Malott] contracting such disease." (*Id.* ¶¶ 56, 59.)

II. <u>**Procedural History and the Pending Motion**</u>

On February 19, 2016, Marriott filed its Answer to the original Complaint. (Docket No. 9.) In response to the plaintiffs' allegations that Marriott breached its duty to provide Mr. Malott with proper medical care, Marriott argued that the plaintiffs' entire action is a "health care liability action" subject to the provisions of the THCLA and, since the plaintiffs "failed to comply with the Act's pre-suit notice and expert certification requirements," should be dismissed with prejudice. (Docket No. 9 ¶¶ 56, 59.) Shortly thereafter, the plaintiffs filed a Motion to Amend/Correct the Complaint, seeking to strike from the Complaint the two paragraphs referring to Marriott's duty to provide Mr. Malott with appropriate medical care.[4] (Docket No. 10.) The plaintiffs noted that they had "no intent to pursue a health care liability action against [Marriott]" and that removing those two paragraphs would "avoid any confus[ion]" about the claims the plaintiffs intended to allege. (Docket No. 10-1, p. 2.) Marriott opposed the motion on the grounds that, "[w]hether the [p]laintiff[s] intended this action to fall within the scope of the THCLA or not, it does." (Docket No. 11, p. 2.) Marriott further argued that the Complaint could not be amended to remove the allegations that arguably triggered coverage under the THCLA. (*Id.* at pp. 6–9.) The court granted the plaintiffs' Motion to Amend, stating that nothing in the THCLA "precludes a plaintiff from withdrawing allegations in a complaint, even in an attempt to re-characterize the action to avoid dismissal," and noting that Marriott had cited no authority for

---

[4] Other than the removal of these two paragraphs, the Amended Complaint made no changes to the allegations in the plaintiffs' initial Complaint.

4

its argument that the plaintiffs' Complaint was "'frozen in stone' and may never be amended." (Docket No. 13.) The court did, however, note that Marriott "may proceed to file a motion to dismiss based on the fact that this action, *as amended*, does come within the [THCLA] and should be dismissed because the plaintiffs did not comply with pre-suit requirements." (*Id.* (emphasis added).)

On March 23, 2016, Marriott filed a Motion to Dismiss, arguing that (1) the plaintiffs' action – as originally alleged – is a health care liability action subject to the pre-suit notice and good faith certificate requirements of the THCLA, and (2) the THCLA does not "authorize a claimant to cure deficiencies [in a complaint] by filing an amended complaint." (Docket No. 15 (quoting *Vaughn v. Mt. States Health Alliance*, No. E2012-01042, 2013 WL 817032, at *6 (Tenn. Ct. App. Mar. 15, 2013).) Additionally, Marriott argues that it is a "health care provider" within the meaning of the THCLA because it employs paramedics who provided health care services to Mr. Malott during his stay at the Opryland Hotel. (Docket No. 15-1, pp. 6–8.) The plaintiffs filed a Response in Opposition to Marriott's motion on April 6, 2016, arguing that the Complaint, as amended, is not subject to the THCLA, because it alleges Marriott's breach of duties that are "not based in medicine or in the practice of medicine whatsoever, but in the hotel failing to warn its guests about an extremely contagious Norovirus outbreak despite having knowledge of the same." (Docket No. 17-1, p. 3.) The Response also challenges Marriott's assertion that it is a "health care provider," noting that neither the original nor the Amended Complaint contain any allegations regarding the paramedics purportedly employed by Marriott or the medical care they provided to Mr. Malott. (*Id.* at pp. 6–9.)[5]

---

[5] The plaintiffs also argue that (1) Marriott has not proved that it, and not another entity involved in the operation of the Opryland Hotel, actually employed the paramedics in question; and (2) in opposing the plaintiffs' Motion to Amend/Correct the Complaint, Marriott took the

5

**LEGAL STANDARD**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *accord Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (internal quotation marks omitted). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Detailed factual allegations are not required, but a complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on labels, "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

contradictory position that it was *not* a "health care provider" under the THCLA. (Docket No. 17-1, pp. 6–11.) The parties further develop these arguments through the Reply and Sur-Reply, even going so far as to introduce extrinsic evidence of the paramedics' relationship to Marriott and the care that they provided to Mr. Malott. As discussed below, however, even assuming that Marriott *is* a "health care provider" within the meaning of the THCLA, the plaintiffs' claims – as alleged in the *Amended* Complaint – do not relate to "the provision of, or failure to provide, health care services" to Mr. Malott and, therefore, are not subject to the procedural requirements of the THCLA.

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *accord Twombly*, 550 U.S. at 555. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

## **ANALYSIS**

It is undisputed that the plaintiffs did not comply with the THCLA's pre-suit notice and expert certification requirements. *See* Tenn Code Ann. § 29-16-121 (requiring sixty days of pre-suit notice to any "health care provider" named as a defendant in a "health care liability action"); *id.* § 29-16-122 (requiring the filing of a certificate of good faith, in which the plaintiff represents that he has consulted with an expert who believes there is a "good faith basis to maintain the action," with the plaintiff's complaint). The sole question before the court, therefore, is whether the plaintiffs' claims constitute a "health care liability action" that is subject to the THCLA and, thereby, are subject to dismissal for failure to comply with the Act's pre-suit notice and certificate of good faith requirements.[6]

The THCLA defines a "health care liability action" as "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." *Id.* § 29-26-101(a). In determining whether a plaintiffs' claims constitute a "health care liablity action" for purposes of the THCLA, the plain language of this definition is "conclusive." *Osunde v. Delta Med. Ctr.*, No. W2015-01005, 2016 WL 537075, at *7 (Tenn. Ct.

---

[6] Marriott argues that failure to comply with either of these requirements necessitates dismissal of the plaintiffs' claims *with* prejudice. (Docket No. 15, p. 1.) While it is true that failure to file a certificate of good faith requires dismissal of a plaintiff's claims with prejudice, "the proper remedy" for a failure to provide pre-suit notice is dismissal *without* prejudice. *Ellithorpe v. Weismark*, 479 S.W.3d 818, 829 (Tenn. 2015).

7

App. Feb. 10, 2016).[7] As noted above, the parties strenuously dispute whether Marriott is a "health care provider" within the meaning of the THCLA. Even assuming, however, that Marriott *is* such a provider, the court concludes that the plaintiffs' claims are not subject to the THCLA because they do not – as alleged in the Amended Complaint – "relate[] to the provision of, or failure to provide, health care services" to Mr. Malott. The Amended Complaint makes no mention of medical care or related services that were, or should have been, provided to Mr. Malott, nor does it reference any action or failure to act on the part of the medical staff purportedly employed by Marriott. The plaintiffs' claims, rather, relate to Marriott's alleged failure to prevent the Norovirus outbreak at the Opryland Hotel, to timely and effectively contain the outbreak once it occurred, and to warn incoming guests of the risks associated with that outbreak either before or during their stays. (*See, e.g.*, Docket No. 14 ¶¶ 33, 46.)

Marriott argues that, in determining whether this action is subject to the THCLA, this court should look not to the allegations of the Amended Complaint but, rather, to the allegations of the Complaint originally filed by the plaintiffs, which *did* state that Marriott failed to provide Mr. Malott with adequate medical care. (Docket No. 15-1, p. 2 (citing Docket No. 1 ¶¶ 56, 59).) In so arguing, Marriott attempts to resurrect its argument, originally made in opposition to the plaintiffs' Motion to Correct/Amend the Complaint and already rejected by this court, that the plaintiffs cannot amend their complaint to remove allegations that arguably might trigger coverage under the THCLA and, thereby, avoid dismissal for failure to comply with the Act's procedural requirements. Marriott now quotes *Vaughn*, a Tennessee Court of Appeals opinion,

---

[7] The test is not, as the plaintiffs appear to argue in their Response, whether the "gravamen" of the complaint is "ordinary negligence." (Docket No. 17-1, p. 12.) The "gravamen" test for coverage under the THCLA was recently abrogated by the Tennessee Supreme Court in favor of the application of the plain language of the Act's definition of a "health care liability action." *Ellithorpe*, 479 S.W.3d 818.

8

as stating that "the THCLA 'do[es] not authorize a claimant to cure deficiencies [in a complaint] by filing an *amended complaint*.'" (Docket No. 15-1, pp. 5–6 (quoting *Vaughn*, 2013 WL 817032, at *6, *overruled on other grounds by Davis v. Ibach*, 465 S.W.3d 570, 573 (Tenn. 2015)).) Even assuming that Tennessee caselaw is relevant to a federal court's exercise of its power, under Federal Rule of Civil Procedure 15, to give a plaintiff leave to amend a complaint "when justice so requires," Marriott reads *Vaughn* too broadly. *Vaughn* holds only that a plaintiff in an inarguable "health care liability action" may not amend a complaint to cure deficiencies in procedural requirements of the THCLA. 2013 WL 817032, at *6–7. *Vaughn* contains no discussion of whether a plaintiff may, as is the case here, amend his complaint to completely remove all reference to the provision of medical care and, thereby, move forward with causes of action that are wholly unrelated to "the provision of, or failure to provide, health care services." The court has already rejected this argument by Marriott once (Docket No. 13), and it is not persuaded to change its position by the narrow holding of the *Vaughn* decision.

Accordingly, the court concludes that the Amended Complaint does not allege a "health care liability action" subject to the procedural requirements of the THCLA and will, therefore, deny Marriott's Motion to Dismiss.

## **CONCLUSION**

For the reasons discussed herein, the Motion to Dismiss filed by Marriott is **DENIED**. This case is **RESET** for an initial case management conference on September 1, 2016 at 1:00 p.m..

It is so **ORDERED**.

Enter this 9th day of August 2016.

_____
ALETA A. TRAUGER
United States District Judge